# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **ENERGYLINK CORPORATION** | § | |
| **d/b/a ENERGYLINK INTERNATIONAL** | § | |
| **Plaintiff** | § | |
| | § | **Civil Action No. 4:23-cv-00626** |
| **v.** | § | |
| | § | **Judge Andrew S. Hanen** |
| **BRADEN GROUP B.V.** | § | |
| **f/k/a INNOVA GLOBAL EUROPE B.V.** | § | |
| **Defendant** | § | |

## ENERGYLINK'S BRIEF IN OPPOSITION
## TO BRADEN'S MOTION TO DISMISS

Dated: April 4, 2023

BAKER & HOSTETLER LLP

Billy M. Donley, *attorney-in-charge*
Texas Bar No. 05977085
Mark E. Smith, *of counsel*
Texas Bar No. 24070639
811 Main Street, Suite 1100
Houston, Texas 77002
T (713) 751-1600
F (713) 751-1717

Kevin W. Kirsch, *of counsel*
(admitted *pro hac vice*)
Ohio Bar No. 81996
Andrew E. Samuels, *of counsel*
(admitted *pro hac vice*)
Ohio Bar No. 90189
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
T (614) 228-1541
F (614) 462-2616

*Attorneys for Plaintiff*
*EnergyLink Corporation*
*d/b/a EnergyLink International*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     NATURE AND STAGE OF PROCEEDING ....................................................2

III.    ISSUES TO BE RULED UPON...........................................................................3

IV.     SUMMARY OF ARGUMENT ............................................................................4

V.      ARGUMENT ..........................................................................................................6

      A.      Braden's demand letter, which asserts trade secrets and threatens
              EnergyLink's SCR business, gives rise to an actual controversy. (Count 1) ..........6

      B.      EnergyLink states plausible claims for defamation, business disparagement,
              tortious interference, unfair competition, and false advertising. ............................9

            1.      Defamation (Count 2) ................................................................................9

            2.      Business Disparagement (Count 3)........................................................10

            3.      Tortious Interference (Count 4) ..............................................................11

             4.      Unfair Competition (Count 5)..................................................................13

             5.      False Advertising (Count 6)......................................................................13

VI.     CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accresa Health LLC v. Hint Health Inc.*,
No. 4:18-CV-00536, 2020 WL 2610908 (E.D. Tex. May 22, 2020)......................................10

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
No. 15-cv-627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016) ...........................................3, 6

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
No. 15-cv-627, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017) ....................................... *passim*

*Cantu v. Guerra*,
No. 20CV0746, 2021 WL 2652933 (W.D. Tex. June 28, 2021)................................3, 4, 9, 13

*Encompass Off. Sols., Inc. v. Ingenix, Inc.*,
775 F. Supp. 2d 938 (E.D. Tex. 2011).................................................................................5, 10

*Farouk Sys., Inc. v. Costco Wholesale Corp.*,
700 F. Supp. 2d 780 (S.D. Tex. 2010)......................................................................................12

*Healthpoint, Ltd. v. Allen Pharm., LLC*,
No. 07-CA-0526, 2008 WL 728333 (W.D. Tex. Mar. 18, 2008)......................................13, 14

*Hellmuth v. Efficiency Energy, L.L.C.*,
No. 14-2945, 2016 WL 642352 (S.D. Tex. Feb. 18, 2016).......................................................11

*Human Power of N Co. v. Bryan*,
No. 21-CV-811, 2022 WL 2719632 (W.D. Tex. Mar. 11, 2022)...........................................12

*Kleiner v. First Nat'l Bank*,
751 F.2d 1193 (11th Cir. 1985)...............................................................................................14

*M-I LLC v. Stelly*,
733 F. Supp. 2d 759 (S.D. Tex. 2010).....................................................................................13

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
571 U.S. 191 (2014)...............................................................................................................7, 8

*Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*,
880 F. Supp. 1005 (S.D.N.Y. 1994)..................................................................................4, 6, 15

*N. Cypress Med. Ctr. Operating Co. v. Gallagher Ben. Servs., Inc.*,
No. 4:11-CV-00685, 2012 WL 2870639 (S.D. Tex. July 11, 2012) .......................................11

*Nat'l Travel Sys., L.P. v. Shorts Travel Mgmt., Inc.*,
No. 10-CA-567, 2010 WL 11601990 (W.D. Tex. Oct. 7, 2010)......................................14, 15

*Nguyen v. Hoang*,
No. 17-2060, 2020 WL 12575076 (S.D. Tex. Aug. 10, 2020) ................................10

*Off. Brands, Inc. v. Roc Nation Sports, LLC*,
No. 3:15-CV-2199, 2015 WL 8915804 (N.D. Tex. Dec. 15, 2015) ......................................11

*Paul v. FedEx Ground Package Sys., Inc.*,
No. 10-258, 2010 WL 2269926 (S.D. Tex. June 4, 2010)..................................4, 11

*Rail Scale, Inc. v. Balanced Railscale Certification, LLC*,
No. 2:15-CV-02117, 2017 WL 319077 (E.D. Tex. Jan. 23, 2017)..........................................11

*SanDisk Corp. v. STMicroelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007)......................................................................................8

*Scott v. Houma-Terrebonne Hous. Auth.*,
No. 02-770, 2002 WL 31007412 (E.D. La. Sept. 6, 2002)......................................10

*Sec. Data Supply, LLC v. Nortek Sec. & Control LLC*,
No. 3:18-CV-1399, 2019 WL 3305628 (N.D. Tex. July 22, 2019)...................................5, 11

*Seven-Up Co. v. Coca-Cola Co.*,
86 F.3d 1379 (5th Cir. 1996) ...................................................................................4, 6, 15

*Solvay Pharms., Inc. v. Glob. Pharms.*,
298 F. Supp. 2d 880 (D. Minn. 2004).................................................................................14

*State Auto. Mut. Ins. Co. v. Quantum Machining, LLC*,
No. 14-CA-720, 2015 WL 11669643 (W.D. Tex. Jan. 14, 2015) ..........................................9

*Sun State Oil, Inc. v. Pahwa*,
No. 3:18-CV-619, 2019 WL 138650 (S.D. Miss. Jan. 8, 2019) ..........................................5, 13

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
No. 3:21cv252, 2022 WL 3005990 (E.D. Va. July 28, 2022) ..................................7

*Tempur-Pedic Int'l Inc. v. Angel Beds LLC*,
902 F. Supp. 2d 958 (S.D. Tex. 2012) .............................................................................4, 13

*VG Innovations, Inc. v. Minsurg Corp.*,
No. 8:10-cv-1726, 2011 WL 1466181 (M.D. Fla. Apr. 18, 2011) ........................................14

*WENO Exch. LLC v. Redwood HCA LLC*,
No. 6:20-CV-00129, 2022 WL 17812834 (W.D. Tex. Aug. 24, 2022)...................................16

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................3, 9, 12, 13

Fed. R. Civ. P. 12(b)(1)....................................................................................6

Fed. R. Civ. P. 12(b)(6)....................................................................................9

## I.   INTRODUCTION

Despite admitting that EnergyLink's claim for a declaratory judgment of no trade secret misappropriation "is based on a letter sent by Braden's counsel to EnergyLink," Braden denies that an actual controversy exists *without ever quoting the letter*. (Doc. No. 8 at 2.) That is a major omission. In the letter, Braden repeatedly asserts ownership of alleged trade secrets in selective catalytic reduction ("SCR") systems and accuses EnergyLink of misappropriating them:

> My firm represents Braden Group B.V. f/k/a Innova Global Europe B.V. (the "Company"), the successor-in-interest to your former employer, Innova Global Ltd., and rightful owner of certain intellectual property assets, including trade secret, confidential, and/or proprietary information previously owned by Innova Global Ltd. It has come to the attention of the Company that your company, EnergyLink International ("You" or "Your") has in its possession trade secret, confidential, and/or proprietary information belonging to the Company, including but not limited to certain engineering drawings depicting aspects of the Company's selective catalytic reduction (SCR) systems ("Company Information"), and that Your employees have used and/or disclosed Company Information in the United States without authorization.
>
> Federal and state law strictly prohibit Your use or disclosure of any trade secret, confidential and/or proprietary business information for Your own personal benefit or for the benefit of any third party at any time in any actual or prospective transaction with any third party in the United States. Any conversion or improper use of such information exposes You, and potentially any third party to which You disclosed such information, to potential claims for misappropriation of trade secrets, breach of contract, unfair competition, breach of the fiduciary duty of loyalty, and tortious interference with prospective economic advantage, among others.

(Doc. No. 1-1) (emphasis added). This letter creates an actual controversy about whether the alleged trade secrets are owned by Braden and were misappropriated. If anything is "vague and amorphous" (Doc. No. 8 at 6) about this controversy, it is Braden's open-ended description of its own alleged trade secrets—an issue on which Braden, not EnergyLink, bears the burden of proof.

Braden's other main argument suffers from a similar omission. Braden argues that EnergyLink's remaining claims "are predicated on unidentified statements allegedly made by Braden to GE and others." (*Id.* at 3.) Yet Braden only partially quotes EnergyLink's descriptions of those statements. For example, Braden omits this context: In 2022, after EnergyLink had become a GE certified vendor and before GE ended business discussions with EnergyLink,

Braden falsely accused EnergyLink of "using Braden[]'s intellectual property in EnergyLink's SCR systems." (Doc. No. 1 ¶ 26.) Braden's false accusations caused EnergyLink to lose business from GE, who found it "too risky to get involved in a dispute between" EnergyLink and Braden. (*Id.* ¶¶ 26–27.) These allegations provide more than enough material for Braden to investigate EnergyLink's claims—and for EnergyLink to withstand Braden's motion to dismiss.

For these reasons and more, Braden's motion to dismiss should be denied.

## II.  NATURE AND STAGE OF PROCEEDING

Last December, Braden's lawyers sent EnergyLink's CEO a letter accusing EnergyLink of having possessed, "used and/or disclosed" unidentified "intellectual property assets," including trade secrets, allegedly "belonging to" Braden. (Doc. No. 1-1.) Without any supporting evidence, Braden claimed ownership of "trade secret . . . information," accused EnergyLink of "possess[ing]" its "trade secret . . . information," proclaimed that EnergyLink's alleged "use or disclosure of any trade secret" is "strictly prohibit[ed]," and threatened "potential claims for misappropriation of trade secrets." (*Id.*) The alleged trade secrets apparently relate to "aspects of . . . selective catalytic reduction (SCR) systems" (*id.*), but Braden refuses to identify them with any particularity. (Doc. No. 1 ¶ 30.)

While investigating Braden's sweeping allegations, EnergyLink learned that Braden has been spreading misinformation in the market about EnergyLink's ability to lawfully supply SCR systems. (*Id.* ¶ 26.) In 2022, for example, EnergyLink was in discussions with GE about potentially supplying SCR systems to GE in Houston. (*Id.*) EnergyLink was well-positioned to supply GE, as it had recently become a GE certified vendor and had already supplied 50+ SCR systems in Houston for EnergyLink's other customers. (*Id.*) But then, suddenly, GE ended the discussions. (*Id.*) When EnergyLink asked why, GE answered that it was too risky to get

involved in a dispute between two vendors. (*Id.*) EnergyLink investigated GE's answer and quickly discovered that Braden had falsely accused EnergyLink of using Braden's intellectual property in EnergyLink's SCR systems. (*Id.*)

To lift the cloud that Braden placed over its SCR business, EnergyLink filed this action. Citing Braden's December letter, EnergyLink seeks a declaratory judgment that it has not misappropriated any Braden trade secret (Count 1). And citing Braden's false accusations, EnergyLink brings claims for defamation (Count 2), business disparagement (Count 3), unfair competition (Count 4), tortious interference (Count 5) and false advertising (Counts 6 and 7). For the following reasons, EnergyLink states plausible claims for relief.

## III.   ISSUES TO BE RULED UPON

1.      Whether EnergyLink's claim for a declaratory judgment of no trade secret misappropriation (Count 1), which arises from Braden's letter asserting trade secrets and threatening EnergyLink's SCR business, alleges an actual controversy. An actual controversy exists when "[the plaintiff] asserts that [the defendant] violates [the plaintiff's] intellectual property rights and [the defendant] argues that it does not." *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 15-cv-627, 2017 WL 1177966, at *4 (S.D. Tex. Mar. 29, 2017) (overruling in relevant part *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 15-cv-627, 2016 WL 8648927, at *6 (S.D. Tex. Mar. 29, 2016)).

2.      Whether EnergyLink states plausible claims for defamation (Count 2) and business disparagement (Count 3) based in part on Braden's false statements to GE that EnergyLink was using Braden's intellectual property in EnergyLink's SCR systems. Rule 9(b) does not apply to defamation and business disparagement claims, so EnergyLink need not plead Braden's false statements with particularity. *Cantu v. Guerra*, No. 20CV0746, 2021 WL

2652933, at *17 (W.D. Tex. June 28, 2021); *Tempur-Pedic Int'l Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 967 (S.D. Tex. 2012). EnergyLink need only "provide fair notice" of the statement. *Cantu*, 2021 WL 2652933, at *17.

3.　　　Whether EnergyLink states a plausible claim for tortious interference with a prospective business relationship (Count 4) based in part on Braden making false statements to GE while EnergyLink was in discussions with GE to supply SCR systems. EnergyLink need only allege that a business relationship with GE was "reasonably probable, considering all of the facts and circumstances attendant to the transaction." *Paul v. FedEx Ground Package Sys., Inc.*, No. 10-258, 2010 WL 2269926, at *3 (S.D. Tex. June 4, 2010).

4.　　　Whether EnergyLink states a plausible claim for unfair competition (Count 5) based on defamation, business disparagement, or tortious interference.

5.　　　Whether EnergyLink states a plausible claim for false advertising (Count 6)[1] based in part on Braden making false statements to divert GE's business away from EnergyLink. *See Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 & n.10 (5th Cir. 1996); *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1020–21 (S.D.N.Y. 1994).

## IV.　SUMMARY OF ARGUMENT

1.　　　EnergyLink's declaratory judgment claim (Count 1) alleges an actual controversy. Braden sent EnergyLink a letter claiming ownership of "trade secret . . . information," accusing EnergyLink of "possess[ing]" its "trade secret . . . information," proclaiming that EnergyLink's alleged "use or disclosure of any trade secret" is "strictly prohibit[ed]," and threatening "potential claims for misappropriation of trade secrets." (Doc. No. 1-1.) Braden has expressly

---

[1] EnergyLink continues to pursue its claim for false advertising under the federal Lanham Act (Count 6), but is no longer pursuing its claim for false advertising under the Texas Deceptive Trade Practices Act (Count 7).

refused to withdraw the letter and to grant EnergyLink a covenant not to sue for trade secret misappropriation. Ex. 1. EnergyLink has the right to lift the cloud that Braden placed over its SCR business, whether or not Braden asserts an affirmative claim for trade secret misappropriation. *BHL*, 2017 WL 1177966, at *3–4. Braden's contrary argument is based on the *BHL* court's 2016 decision, which was **overruled** in relevant part in 2017. *Id.*

2. EnergyLink states plausible claims for defamation (Count 2) and business disparagement (Count 3). EnergyLink alleges that Braden, in discussions with GE, "falsely accused EnergyLink of using Braden[]'s intellectual property in EnergyLink's SCR systems." (Doc. No. 1 ¶ 26.) EnergyLink alleges that Braden made these false accusations in 2022, while "EnergyLink was in discussions with GE about potentially supplying SCR systems to GE" and after EnergyLink had "become a GE certified vendor." (*Id.*) These allegations give Braden fair notice of the statements at issue. *See Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 958 (E.D. Tex. 2011).

3. EnergyLink states a plausible claim for tortious interference with a prospective business relationship (Count 4). EnergyLink pleads that it and GE were "close to reaching an agreement," *Sec. Data Supply, LLC v. Nortek Sec. & Control LLC*, No. 3:18-CV-1399, 2019 WL 3305628, at *8 (N.D. Tex. July 22, 2019), and Braden's intent to interfere with that near-agreement may be inferred from the parties' past business relationship. *Sun State Oil, Inc. v. Pahwa*, No. 3:18-CV-619, 2019 WL 138650, at *3 (S.D. Miss. Jan. 8, 2019).

4. EnergyLink states a plausible claim for unfair competition (Count 5) for the same reasons it states plausible claims for defamation, business disparagement, and tortious interference.

5.      EnergyLink states a plausible claim for false advertising (Count 6). Braden's false advertising was communicated widely enough to constitute commercial advertising or promotion. In fact, the relevant market consisted of GE alone, because EnergyLink was in active discussions with GE to provide SCR systems specifically for GE. *See Seven-Up*, 86 F.3d at 1386 & n.10; *Mobius*, 880 F. Supp. at 1020–21.

## V.    ARGUMENT

### A.    Braden's demand letter, which asserts trade secrets and threatens EnergyLink's SCR business, gives rise to an actual controversy. (Count 1)

Braden sent EnergyLink a demand letter claiming ownership of "trade secret . . . information," accusing EnergyLink of "possess[ing]" its "trade secret . . . information," proclaiming that EnergyLink's alleged "use or disclosure of any trade secret" is "strictly prohibit[ed]," and threatening "potential claims for misappropriation of trade secrets." (Doc. No. 1-1.) Braden admits that "EnergyLink's declaratory judgment claim" (Count 1), seeking a declaration of no trade secret misappropriation, "is based on" that letter. (Doc. No. 8 at 2.) Yet Braden seeks to dismiss the claim under Rule 12(b)(1) "because there is no actual controversy." (Doc. No. 8 at 3.) Braden is wrong—as shown by its reliance on an ***overruled*** decision.

Braden spends an entire page trying to explain how this case is "analogous to this Court's [2016] decision in *BHL*." (Doc. No. 8 at 9) (discussing *BHL*, 2016 WL 8648927, at *6). But the 2016 decision was ***overruled*** in relevant part on reconsideration in 2017. *BHL*, 2017 WL 1177966, at *4. And the 2017 decision favors EnergyLink, not Braden.

In the 2016 *BHL* decision, the court initially dismissed a counterclaim for a declaratory judgment of no copyright infringement "for lack of subject matter jurisdiction." 2016 WL 8648927, at *6. No actual controversy existed, the court initially held, because the counterclaim defendant "did not bring a copyright claim . . . and very likely may never do so." *Id.*

6

But in the 2017 *BHL* decision, the court reconsidered and ***overruled*** that aspect of the 2016 *BHL* decision. 2017 WL 1177966, at *4. It recognized that subject matter jurisdiction over a claim for a declaratory judgment of no liability may exist "even when a [counterclaim] defendant does not pursue" a corresponding affirmative claim. *Id.* at *3. And it found that subject matter jurisdiction existed because "[counterclaim defendant] asserts that [counterclaim plaintiff]'s use of its software violates [counterclaim defendant's] intellectual property rights and [counterclaim plaintiff] argues that it does not." *Id.* at *4.

The 2017 *BHL* decision defeats Braden's motion. Even though Braden has not yet pursued an affirmative trade secret claim, it has sent EnergyLink a letter asserting ownership of trade secrets and threatening claims of trade secret misappropriation. (Doc. No. 1-1.) EnergyLink disagrees with Braden's assertions. And Braden does not rule out suing EnergyLink for alleged trade secret misappropriation in the future: Braden's decision not to bring a trade secret claim was "based on the information then available to it." (Doc. No. 8 at 8.) Apparently, Braden reserves the right to bring a trade secret claim based on information newly available to it. Under the 2017 *BHL* decision, these conditions give rise to an actual controversy.

When Braden is not misreading *BHL*, its arguments fail for additional reasons. First, Braden faults *EnergyLink* for not "identify[ing] any particular trade secrets" belonging to *Braden*. (*Id.* at 7.) This argument has the burdens of proof backwards. On a claim for a declaratory judgment of no trade secret misappropriation, the purported trade secret owner bears the burden of proving the elements of an affirmative trade secret claim. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 202–03 (2014) (holding that patent owner bears burden of proving infringement in action for declaratory judgment of no patent infringement); *Synopsys, Inc. v. Risk Based Sec., Inc.*, No. 3:21cv252, 2022 WL 3005990, at *8 n.24 (E.D. Va.

July 28, 2022) (applying *Medtronic* to claim for declaratory judgment of no trade secret misappropriation). It is Braden's burden, not EnergyLink's, to identify Braden's own trade secrets.

Second, Braden denies that it has "cast" a "cloud" over "any specific actions that [EnergyLink] wishes to take." (Doc. No. 8 at 7.) But Braden's demand letter and EnergyLink's complaint show otherwise. In the demand letter, Braden accuses EnergyLink of having "used and/or disclosed" Braden's alleged "trade secret . . . information," including information relating to "selective catalytic reduction (SCR) systems." (Doc. No. 1-1.) And in the complaint, EnergyLink alleges that Braden's accusations threaten EnergyLink's ability "to make, sell, offer for sale, and supply SCR systems" to customers. (Doc. No. 1 ¶ 31.) These are the specific actions that EnergyLink wishes to take. EnergyLink cannot be forced to choose between "either pursuing arguably illegal behavior or abandoning that which [it] claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007); *see also BHL*, 2017 WL 1177966, at *4 (finding actual controversy when counterclaim plaintiff "engaged in actual manufacture, use, or sale of the [accused] software" and "sued [] to enforce its rights" to do so).

Despite all this, Braden could have mooted EnergyLink's declaratory judgment claim by withdrawing its demand letter and granting EnergyLink a covenant not to sue for trade secret misappropriation. EnergyLink suggested that Braden do exactly that. Ex. 1. Braden refused. *Id.* Having made that choice, Braden cannot deny that the parties have an actual controversy about Braden's alleged trade secrets.

Braden's alternative argument, that the Court should "exercise discretion to decline jurisdiction over EnergyLink's declaratory judgment claim," does not override this conclusion. (Doc. No. 8 at 5.) The Court cannot exercise that discretion without expressly applying a seven-

factor test, called the "*Trejo* factors." *See State Auto. Mut. Ins. Co. v. Quantum Machining, LLC*, No. 14-CA-720, 2015 WL 11669643, at *5 (W.D. Tex. Jan. 14, 2015). Yet Braden provides no argument on, or even mentions, any of the *Trejo* factors. This nonexistent analysis fails on its face. And even if Braden did a real analysis, it would fail for the reasons stated in *BHL*. *See BHL*, 2017 WL 1177966, at *4 ("In light of the actual controversy between the parties as to the genesis of [counterclaim plaintiff]'s software, the Court can settle the dispute, and indeed it should . . . .").

**B.    EnergyLink states plausible claims for defamation, business disparagement, tortious interference, unfair competition, and false advertising.**

Braden admits that EnergyLink's other claims arise in part from Braden's statements that "accused EnergyLink of using Braden[]'s intellectual property in EnergyLink's SCR systems" and "claim[ed] that Braden[] owns the intellectual property of Innova." (Doc. No. 8 at 3) (citing Doc. No. 1 ¶¶ 26, 27, 68, 72). Braden's admissions show that Braden is on notice of the statements at issue. Because EnergyLink plausibly alleges actionable statements, among other reasons, the Rule 12(b)(6) portion of Braden's motion to dismiss should be denied.

**1.    Defamation (Count 2)**

Braden concedes that EnergyLink "sufficiently plead[s]" all the elements of a defamation claim, except one: a "defamatory statement." (Doc. No. 8 at 10.) But EnergyLink sufficiently pleads that element, too.

"Rule 9(b) does not apply to defamation claims." *Cantu*, 2021 WL 2652933, at *17. So a plaintiff need not plead a defamatory statement with particularity, and there is no "absolute requirement for time and place allegations." *Id.* at *15. Instead, the plaintiff need only "provide fair notice" of the statement. *Id.* at *17. Fair notice exists when a defamatory statement is "described in such a manner that will enable the [d]efendant[] to easily investigate the alleged

statements through discovery." *Encompass*, 775 F. Supp. 2d at 958. For example, allegations that a defendant made "false accusations" of trade secret misappropriation "after . . . July 31, 2018" withstood a motion to dismiss because, even though they did not "specify when . . . or to whom [the false accusations] were specifically made," they were "sufficient to put [the defendant] on notice of the claim." *Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2020 WL 2610908, at *6 (E.D. Tex. May 22, 2020).

EnergyLink's allegations provide at least the same level of notice. EnergyLink alleges that Braden, in statements to GE, "falsely accused EnergyLink of using Braden[]'s intellectual property in EnergyLink's SCR systems." (Doc. No. 1 ¶ 26.) EnergyLink alleges that Braden made these false accusations in 2022, while "EnergyLink was in discussions with GE about potentially supplying SCR systems to GE in Houston" and after EnergyLink had "become a GE certified vendor." (*Id.*) Given these allegations, Braden can easily investigate the statements through discovery. *Encompass*, 775 F. Supp. 2d at 958.

Braden's cited case, *Nguyen*, does not hold otherwise. (Doc. No. 8 at 11.) *Nguyen* stands for the simple point that a defamation claim must be based on an actual "statement," as opposed to an unstated "insinuation." *Nguyen v. Hoang*, No. 17-2060, 2020 WL 12575076, at *3 (S.D. Tex. Aug. 10, 2020). EnergyLink alleges actual statements, not unstated insinuations. Nothing more is required at the pleading stage.[2]

### 2. Business Disparagement (Count 3)

Braden concedes that its argument against EnergyLink's business disparagement claim is "[s]imilar to" its argument against EnergyLink's defamation claim. (Doc. No. 8 at 11.) Both

---

[2] If the Court desires more detail about Braden's statements, or about any other aspect of EnergyLink's claims, EnergyLink requests leave to amend. *See Scott v. Houma-Terrebonne Hous. Auth.*, No. 02-770, 2002 WL 31007412, at *4 (E.D. La. Sept. 6, 2002) (granting leave to amend "conclusory" defamation claim).

claims are analyzed under the same "framework," and both claims require a "defamatory statement." *Hellmuth v. Efficiency Energy, L.L.C.*, No. 14-2945, 2016 WL 642352, at *2 (S.D. Tex. Feb. 18, 2016). Braden argues that "the same alleged statements" were not "sufficiently plead[ed]" in both claims. (Doc. No. 8 at 11.) Given these similarities, Braden's arguments against business disparagement fail for the same reasons that Braden's arguments against defamation fail.

### 3. Tortious Interference (Count 4)

EnergyLink plausibly alleges that it had a reasonable probability of a business relationship with GE, that Braden committed an independently tortious or unlawful act, and that Braden had an intent to interfere with the EnergyLink–GE relationship. (*Contra id.* at 13–15.)

**Reasonable probability of a business relationship.** On this element, EnergyLink need only allege that a business relationship was "reasonably probable, considering all of the facts and circumstances attendant to the transaction." *Paul*, 2010 WL 2269926, at *3. This standard does not require "extensive detail" about the business relationship. *N. Cypress Med. Ctr. Operating Co. v. Gallagher Ben. Servs., Inc.*, No. 4:11-CV-00685, 2012 WL 2870639, at *7 (S.D. Tex. July 11, 2012). It can be met with an allegation of a "pre-existing business relationship" with a third party. *Off. Brands, Inc. v. Roc Nation Sports, LLC*, No. 3:15-CV-2199, 2015 WL 8915804, at *5 (N.D. Tex. Dec. 15, 2015). It can be met with an allegation that the plaintiff "reached or [was] close to reaching an agreement" with a third party. *Sec. Data*, 2019 WL 3305628, at *8. And it can be met with allegations that the plaintiff "had been approached by a potential customer," took steps to secure business from that potential customer, and was later told by the potential customer "that it was no longer interested" in dealing with the plaintiff. *Rail Scale, Inc. v. Balanced Railscale Certification, LLC*, No. 2:15-CV-02117, 2017 WL 319077, at *3 (E.D. Tex. Jan. 23, 2017).

EnergyLink's complaint meets this standard for all of these independent reasons. EnergyLink's allegations that it had been in discussions with GE about potentially supplying SCR systems to GE, going so far as to become a GE certified vendor, support a pre-existing business relationship and near-agreement with GE. (Doc. No. 1 ¶ 26.) EnergyLink's further allegations that GE suddenly ended discussions after Braden falsely accused EnergyLink of using Braden's intellectual property also support a reasonably probable business relationship with GE. (*Id.*)

**Independently tortious or unlawful act.** Braden concedes that if EnergyLink pleads a plausible claim for defamation or business disparagement, then it also plausibly alleges the "independently tortious or unlawful act" element of tortious interference. (Doc. No. 8 at 14.) Because EnergyLink pleads plausible claims for defamation and business disparagement, it plausibly alleges this element.

**Intent to interfere.** Relying in part on the *overruled BHL* opinion, Braden denies that EnergyLink plausibly alleges Braden's intent to interfere with EnergyLink's prospective business relationships. (*Id.* at 14–15.) According to Braden, *EnergyLink* must "allege[] that *Braden* was aware of a[] particular GE contract that EnergyLink was bidding for." (*Id.* at 15) (emphasis added). Not so. Only Braden knows what Braden was aware of. EnergyLink's intent allegations are plausible.

Contrary to Braden's demand for particularized pleading, "intent may be alleged generally" and "can be based on circumstantial factual support." *Human Power of N Co. v. Bryan*, No. 21-CV-811, 2022 WL 2719632, at *5 (W.D. Tex. Mar. 11, 2022) (citing Fed. R. Civ. P. 9(b); *Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780, 785 (S.D. Tex. 2010)). That is why "the intent component of a tortious-interference claim may be inferred"

rather than expressly alleged. *Sun State*, 2019 WL 138650, at *3. Braden's cited case, *Stelly*, does not require more; in that case, the court dismissed a claim that lacked *any* allegations about intent. *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 776 (S.D. Tex. 2010).

EnergyLink's allegations, meanwhile, support an inference of intent: EnergyLink and Braden previously pitched SCR projects together (Doc. No. 1 ¶¶ 17–19), indicating that Braden knew EnergyLink would pursue business from GE. Braden's receiver acknowledged "various claims and disputes" about intellectual property ownership, and that these claims and disputes involved GE. (*Id.* ¶ 22.) And Braden made its false accusations of intellectual property misuse when EnergyLink was progressing toward securing GE's business. (*Id.* ¶¶ 26–27.) These allegations are best explained by—or at least support a reasonable inference of—Braden's intent to divert GE's business from EnergyLink to Braden. EnergyLink should be allowed to proceed to discovery on Braden's intent to interfere, among other issues.

### 4. Unfair Competition (Count 5)

Braden concedes that if EnergyLink states a claim for any one of "defamation, business disparagement, and tortious interference," then EnergyLink also states a claim for unfair competition. (Doc. No. 8 at 15–16.) Because the former claims are plausible, the latter is as well.

### 5. False Advertising (Count 6)

EnergyLink plausibly alleges a false or misleading statement that Braden made in commercial advertising or promotion. (*Contra id.* at 16.)

**False or misleading statement.** Just as Rule 9(b) "does not apply to defamation claims," *Cantu*, 2021 WL 2652933, at *17, Rule 9(b) does not apply to claims for false advertising. *Tempur-Pedic*, 902 F. Supp. 2d at 967. So while a false-advertising plaintiff must allege a false or misleading statement, the plaintiff need not identify the "exact" statement in the complaint. *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. 07-CA-0526, 2008 WL 728333, at *6 (W.D. Tex.

Mar. 18, 2008). Rather, the plaintiff need only identify the general subject matter of the statement. *See id.* (quoting *Solvay Pharms., Inc. v. Glob. Pharms.*, 298 F. Supp. 2d 880, 886 (D. Minn. 2004)) ("false and misleading representations in advertising and marketing regarding the substitutability of [one drug] for [another drug]" held "sufficiently particularized"). EnergyLink satisfies this standard for the same reasons it satisfies the standards for identifying statements in support of its defamation and business disparagement claims.

**Commercial advertising or promotion.** EnergyLink plausibly alleges that Braden's statements qualify as "commercial advertising or promotion." (*Contra* Doc. No. 8 at 17–18.) Both of Braden's challenges to EnergyLink's allegations fail.

In one challenge, Braden denies that its statements "were made for the purpose of influencing customers to buy Braden's goods and services." (*Id.* at 18.) That is wrong as a matter of law. "[C]ommercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests . . . ." *VG Innovations, Inc. v. Minsurg Corp.*, No. 8:10-cv-1726, 2011 WL 1466181, at *5 (M.D. Fla. Apr. 18, 2011) (quoting *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1204, n.22 (11th Cir. 1985)). False accusations of intellectual property ownership and infringement are commercial speech, and they support an inference that the defendant "intended to influence customers to buy [its] products rather than [the plaintiff's] products." *Id.* at *5–6. The same is true of Braden's false statements of intellectual property ownership and misappropriation. (Doc. No. 1 ¶ 26.)

In another challenge, Braden downplays GE as "an individual purchaser" and argues that its statements to GE were not distributed widely enough to be false advertising. (Doc. No. 8 at 18.) But even a statement to an individual purchaser is commercial advertising or promotion when the plaintiff was pursuing that purchaser's business. *See Nat'l Travel Sys., L.P. v. Shorts*

*Travel Mgmt., Inc.*, No. 10-CA-567, 2010 WL 11601990, at *5–6 (W.D. Tex. Oct. 7, 2010); *Mobius*, 880 F. Supp. at 1020–21.

The Fifth Circuit "draw[s] on the general approach of" the *Mobius* case. *Seven-Up*, 86 F.3d at 1386 & n.10. In *Mobius*, the defendant sent the plaintiff's prospective customer a letter that allegedly contained false statements about the plaintiff's product. 880 F. Supp. at 1008. Even though this letter "was not a classic advertising campaign," it was commercial advertising or promotion. *Id.* at 1021 (quotation omitted). Whether other "potential purchasers in the market" (Doc. No. 8 at 18) received the letter was irrelevant. Because the prospective customer's "purchase of [the plaintiff's] product" was "impending," and because the defendant's false advertising interfered with that impending purchase, the "true relevant purchasing public consisted solely of" that one prospective customer. *Mobius*, 880 F. Supp. at 1021.

Similarly, in *National Travel*, the defendant allegedly made false statements to the state of Texas, which caused the plaintiff to lose travel-management services business from the state. 2010 WL 11601990, at *1. Even though the parties competed throughout "the 'travel services industry' . . . overall," the defendant's statements to the state plausibly were advertising or promotion. *Id.* at *5. The plaintiff had alleged "some facts" indicating that its products "were custom-made for the [s]tate," so it was plausible that "the relevant purchasing public" was the state alone. *Id.* at *6.

Here, as well, the relevant market plausibly consists of GE alone. EnergyLink was in discussions with GE about supplying SCR systems to GE. (Doc. No. 1 ¶ 26.) EnergyLink had even become a GE-certified vendor, which supports an inference that GE had specific, custom requirements for its SCR systems. (*Id.*) GE ultimately said that it was too risky to get involved in

a dispute between two vendors: EnergyLink and Braden. (*Id.*)[3] Braden's false statements to GE

that EnergyLink was using Braden's intellectual property in its SCR systems interfered with the

EnergyLink–GE relationship. (*Id.* ¶ 27.) Plausibly, Braden made these false statements to cause

GE to stop doing business with EnergyLink and to do business with Braden instead. That is

commercial advertising or promotion.

## VI.    CONCLUSION

EnergyLink states plausible claims for relief on Counts 1–6 of the complaint. Braden's

motion to dismiss those claims should be denied.

Dated: April 4, 2023                                        Respectfully submitted,

                                                            BAKER & HOSTETLER LLP

                                                            */s/ Billy M. Donley*
Kevin W. Kirsch, *of counsel*                               Billy M. Donley, *attorney-in-charge*
(admitted *pro hac vice*)                                   Texas Bar No. 05977085
Ohio Bar No. 81996                                          Mark E. Smith, *of counsel*
Andrew E. Samuels, *of counsel*                             Texas Bar No. 24070639
(admitted *pro hac vice*)                                   811 Main Street, Suite 1100
Ohio Bar No. 90189                                          Houston, Texas 77002
200 Civic Center Drive, Suite 1200                          T (713) 751-1600
Columbus, Ohio 43215                                        F (713) 751-1717
T (614) 228-1541
F (614) 462-2616

                                                            *Attorneys for Plaintiff*
                                                            *EnergyLink Corporation*
                                                            *d/b/a EnergyLink International*

---

[3] If the Court desires more detail about the relevant market, or about any other aspect of EnergyLink's claims, EnergyLink requests leave to amend. *See WENO Exch. LLC v. Redwood HCA LLC*, No. 6:20-CV-00129, 2022 WL 17812834, at *4 (W.D. Tex. Aug. 24, 2022) (granting leave to amend false-advertising claim).