**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENERGYLINK CORPORATION
d/b/a ENERGYLINK INTERNATIONAL,

     Plaintiff,

     v.

BRADEN GROUP B.V.
f/k/a INNOVA GLOBAL EUROPE B.V.,

     Defendant.

C.A. No. 4:23-cv-00626

**DEFENDANT BRADEN GROUP B.V.'S REPLY BRIEF
IN SUPPORT OF ITS RULE 12(B)(1) AND 12(B)(6) MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

I.    THERE IS NO CASE OR CONTROVERSY TO SUPPORT
      JURISDICTION OVER ENERGYLINK'S DECLARATORY
      JUDGMENT CLAIM (COUNT 1)...................................................................1

      A.    EnergyLink's declaratory judgment claim is not justiciable ................................2

      B.    EnergyLink's declaratory judgment claim is contrary to the
            purpose of the Declaratory Judgment Act ............................................................4

      C.    EnergyLink's declaratory judgment claim improperly deprives
            Braden of its right as the master of the complaint ................................................5

      D.    EnergyLink's remaining counterarguments lack merit..........................................5

II.   ENERGYLINK'S COMPLAINT SHOULD BE DISMISSED UNDER
      RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ................................................10

      A.    Defamation (Count 2) ...........................................................................................10

      B.    Business Disparagement (Count 3)........................................................................13

      C.    Tortious Interference with Prospective Business Relationship
            (Count 4) ...............................................................................................................13

      D.    Unfair Competition (Count 5)...............................................................................16

      E.    False Advertising Under the Lanham Act (Count 6)...........................................17

      F.    False Advertising Under the Texas DTPA (Count 7)...........................................20

CONCLUSION......................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Accresa Health LLC v. Hint Health Inc.*,
   No. 18-cv-536, 2020 WL 2610908 (E.D. Tex. May 22, 2020) ...................................10, 11, 12

*AHBP LLC v. Lynd Co.*,
   No. SA-22-CV-00096-XR, 2023 WL 139714 (W.D. Tex. Jan. 9, 2023) ...............................20

*AIDS Healthcare Found., Inc. v. Gilead Sciences, Inc.*,
   890 F.3d 986 (Fed. Cir. 2018).................................................................................................8

*Applera Corp. v. Michigan Diagnostics, LLC*,
   594 F.Supp.2d 150 (D. Mass. 2009) ...............................................................................3, 4, 8

*BHL Boresight, Inc. v. Geo-Steering Sol'ns, Inc.*,
   No. 4:15-cv-627, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017) .....................................1, 5, 6

*Black v. Experian Info. Sol'ns, Inc.*,
   No. 21-cv-04231, 2023 WL 2267266 (S.D. Tex. Feb. 28, 2023) ....................................10, 12

*Boltex Mfg. Co. v. Galperti, Inc.*,
   827 F. App'x 401 (5th Cir. 2020) ...........................................................................................20

*Cantu v. Guerra*,
   No. SA-20-CV-0746-JKP-HJB, 2021 WL 2652933 (W.D. Tex. June 28,
   2021) ....................................................................................................................10, 11, 12

*Corrosion Prevention Techs. LLC v. Hatle*,
   No. 20-cv-2201, 2020 WL 6202690 (S.D. Tex. Oct. 22, 2020) .......................................13, 15

*DeCurtis LLC v. Carnival Corp.*,
   No. 20-22945-Civ-Scola, 2021 WL 1540518 (S.D. Fla. Apr. 20, 2021)...................................3

*DeCurtis LLC v. Carnival Corp.*,
   No. 20-22945-Civ-SCOLA/TORRES, 2021 WL 7539904 (S.D. Fla. Feb. 9,
   2021) ........................................................................................................................................4

*Encompass Office Sol'ns, Inc. v. Ingenix, Inc.*,
   775 F. Supp. 2d 938 (E.D. Tex. 2011) ..........................................................................10, 11, 12

*Euler Hermes N. Am. Ins. Co. v. ILJIN Steel Am., Inc.*,
   No. 16-cv-02215, 2017 WL 1013225 (Feb. 24, 2017) ............................................................9

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
   155 F. Supp. 3d 670 (S.D. Tex. 2015) ...................................................................................16

*Healthpoint Ltd. v. Allen Pharm., LLC*,
　No. SA-07-CA-0526-XR, 2008 WL 728333 (W.D. Tex. Mar. 18, 2008)..............................17

*Huston v. U.S. Bank Nat'l Ass'n*,
　No. CV HJ-10-3702, 2011 WL 13254543 (S.D. Tex. Dec. 14, 2011) ......................................4

*M-I LLC v. Stelly*,
　733 F. Supp. 2d 759 (S.D. Tex. 2010) .............................................................................13, 15

*Magee v. Life Ins. Co. of N. Am.*,
　261 F. Supp. 2d 738 (S.D. Tex. 2003) ...............................................................................2, 20

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
　571 U.S. 191 (2014)...............................................................................................................7

*MH Sub 1, LLC v. FPK Servs., LLC*,
　No. 18-cv-834, 2019 WL 13138139 (W.D. Tex. June 21, 2019) ............................................5

*Mill Creek Press, Inc. v. The Thomas Kinkade Co.*,
　No. 3:04-cv-1213-G, 2004 WL 2607987 (N.D. Tex. Nov. 16, 2004) ......................................9

*Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*,
　880 F. Supp. 1005 (S.D.N.Y. 1994)................................................................................18, 19

*National Travel Sys., L.P. v. Shorts Travel Mgmt., Inc.*,
　No. A-10-CA-567-SS, 2010 WL 11601990 (W.D. Tex. Oct. 7, 2010) .............................18, 19

*Official Brands, Inc. v. Roc Nation Sports, LLC*,
　No. 15-cv-2199, 2015 WL 8915804 (N.D. Tex. Dec. 15, 2015)......................................13, 14

*Prasco, LLC v. Medicis Pharm. Corp.*,
　537 F.3d 1329 (Fed. Cir. 2008)..............................................................................................6

*In re Qualcomm*,
　No. 17-cv-108, 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017)....................................................3

*Rail Scale, Inc. v. Balanced Railscale Certification, LLC*,
　No. 15-cv-02117-RSP, 2017 WL 319077 (E.D. Tex. Jan. 23, 2017) .....................................14

*Ramming v. United States*,
　281 F.3d 158 (5th Cir. 2001) .................................................................................................7

*Sasol N. Am., Inc. v. GTLPetrol, L.L.C.*,
　682 F. App'x 312 (5th Cir. 2017) ...........................................................................................2

*Sec. Data Supply, LLC v. Nortek Sec. & Control LLC*,
　No. 18-cv-1399-S, 2019 WL 3305628 (N.D. Tex. July 22, 2019) ....................................13, 14

*Seven-Up Co. v. Coca-Cola Co.*,
    86 F.3d 1379 (5th Cir. 1996) ...............................................................................19

*Sherwin-Williams Co. v. Holmes County*,
    343 F.3d 383 (5th Cir. 2003) ...................................................................................9

*Solvay Pharm., Inc. v. Global Pharmaceuticals*,
    298 F.Supp.2d 880 (D. Minn. 2004) ................................................................17, 18

*St. Paul Ins. Co. v. Trejo*,
    39 F.3d 585 (5th Cir. 1994) ...............................................................................6, 8, 9

*Synopsys, Inc. v. Risk Based Security, Inc.*,
    No. 3:21-cv-252, 2022 WL 3005990 (E.D. Va. July 28, 2022)..............................7

*Traxxas, L.P. v. Dewitt*,
    No. 14-cv-733, 2015 WL 7777986 (E.D. Tex. Dec. 2, 2015) ...............................10

## Other Authorities

Fed. R. Civ. P 9 and 9(b) ................................................................................10, 17, 18

Fed. R. Civ. P. 8 ...................................................................................................17

Fed. R. Civ. P. Rule 12(b)(1) and (6)........................................................7, 10, 20

Local Rule 7.4 ...................................................................................................1, 20

# I. THERE IS NO CASE OR CONTROVERSY TO SUPPORT JURISDICTION OVER ENERGYLINK'S DECLARATORY JUDGMENT CLAIM (COUNT 1)

EnergyLink seeks a declaration of "no misappropriation of *any* enforceable trade secrets," (Dkt. 1 at ¶ 40 (emphasis added)) but fails to identify any secrets or any relevant acts. As such, EnergyLink's declaratory claim is unsupported by an actual, justiciable controversy and must be dismissed for lack of subject matter jurisdiction.

EnergyLink dedicates much of its brief to the 2017 decision in *BHL* ("*BHL 2017*") reconsidering an earlier decision in the same case which Braden cited and analogized to in its motion. (Dkt. 22 at 6–7.) Braden respectfully retracts its reliance on that earlier decision and apologizes for citing a case that was later vacated in relevant part.[1] Even setting aside that error, however, EnergyLink's declaratory judgment claim still fails.

Indeed, EnergyLink does not even attempt to respond to Braden's primary grounds for dismissing EnergyLink's declaratory claim:

1. The claim is not justiciable because EnergyLink does not identify any specific Braden trade secret or any accused activity EnergyLink plans to undertake (Dkt. 8 at 6–9);

2. The claim is inconsistent with the Declaratory Judgment Act because Braden has not threatened EnergyLink with impending litigation but has, in fact, brought suit (*id.* at 8); and

3. The claim improperly seeks to deprive Braden of its right as the potential intellectual property tort plaintiff and the master of the complaint (*id.* at 6, 8.)

By its failure to address these points, EnergyLink has waived its opposition to as to these arguments. L.R. 7.4 ("Failure to respond will be taken as a representation of no opposition.");

---

[1] The *BHL 2017* court's reconsideration was based on its prior erroneous holding that a copyright registration was a jurisdictional prerequisite to a declaratory judgment claim relating to that copyright. *BHL Boresight, Inc. v. Geo-Steering Sol'ns, Inc.*, No. 4:15-cv-627, 2017 WL 1177966, at *2-3 (S.D. Tex. Mar. 29, 2017). That issue is not relevant here, and thus granting Braden's motion would not resemble the error that was later fixed in the *BHL* reconsideration decision.

*Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 738, 748 n.10 (S.D. Tex. 2003) ("[F]ailure to brief an argument in the district court waives that argument in that court").

Although EnergyLink has clearly waived any argument as to each of these three points, in the interest of completeness, Braden nonetheless addresses them below.

### A.    EnergyLink's declaratory judgment claim is not justiciable

As explained in Braden's opening brief, allowing EnergyLink's unripe declaratory claim to proceed as pled—without identification of any specific trade secrets that belong to Braden or accused activity that EnergyLink intends to undertake—would create significant practical problems for the Court in adjudicating the claim and fashioning specific, appropriate relief. (Dkt. 8 at 6–7.)   Without these critical details, EnergyLink's broad declaratory claim for no misappropriation of "any" trade secrets (which is based solely on a letter that generally references intellectual property, including trade secrets, but that does not identify any specific trade secrets) would force Braden to litigate its entire trade secret portfolio, whether or not related to any dispute between the parties.  This result is an unworkable situation in which the Court would be asked to adjudicate an amorphous declaratory claim that has not matured into a real dispute of definite scope in terms of the particular trade secrets or acts of misappropriation that may be at issue.

Although EnergyLink asserts that it need not plead specific trade secrets to establish a justiciable dispute, *Sasol N. Am., Inc. v. GTLPetrol, L.L.C.* shows otherwise.  682 F. App'x 312 (5th Cir. 2017).  There, the Fifth Circuit affirmed a district court's dismissal of declaratory claims for lack of subject matter jurisdiction.  *Id.* at 315.  The declaratory judgment defendant (Petrol) had previously "threatened possible litigation" against the plaintiff (Sasol) on various causes of action, including trade secret misappropriation and breach of a confidentiality agreement, writing to Sasol that "we will have no other option than to pursue [Petrol's] legal remedies in appropriate forums." *Id.* at 313.   Sasol then sued Petrol for declaratory judgment of no trade secret

misappropriation.  In affirming the court's dismissal for lack of jurisdiction, the Fifth Circuit noted

that the lack of specificity in the alleged trade secret claims rendered them unripe for adjudication:

> Sasol focuses first on the mandatory counterclaim's discussion of the hypothetical
> (and parenthetical) unauthorized use of Petrol's trade secrets in other facilities
> throughout the world.  Based on the record developed in the court below, any such
> misappropriation is nothing more than theoretical at this time and cannot be the
> basis for a controversy of sufficient reality.  The counterclaims do not specify any
> other particular plants where Sasol may be using or planning to use Petrol's
> technology, nor does Sasol identify another facility where it is using or
> contemplating use of the same types of technology that spawned the Louisiana plant
> dispute.  In the absence of any concrete allegation of misuse, the court had no reason
> to suspect that these claims are of sufficient immediacy or reality to justify litigating
> a declaratory judgment proceeding.

*Id.* at 315.  Here too, the "absence of any concrete allegation of misuse" of any Braden trade secret

provides "no reason to suspect that these claims are of sufficient immediacy or reality to justify

litigating a declaratory judgment proceeding."  *Id.*

Relatedly, in the analogous context of patent-based declaratory judgment suits, courts have

held that there is no jurisdiction where the declaratory plaintiff fails to specifically identify the

patents at issue. *See, e.g.*, *DeCurtis LLC v. Carnival Corp.*, No. 20-22945-Civ-Scola, 2021 WL

1540518, at *5 (S.D. Fla. Apr. 20, 2021) (finding declaratory judgment jurisdiction lacking

"without any reference that a ***dispute*** exists for any ***specific*** patent"); *In re Qualcomm*, No. 17-cv-

108, 2017 WL 5985598, at *18 (S.D. Cal. Nov. 8, 2017) (no jurisdiction where "precise infringing

patents" were not identified); *Applera Corp. v. Michigan Diagnostics, LLC*, 594 F.Supp.2d 150,

160 (D. Mass. 2009) (no jurisdiction as to fifty-five patents where patent owner "suggested a

review of its entire patent portfolio, but it did not make any specific allegations of infringement"

as to specific patents).

These cases make clear that a mere reference in a notice letter that warns another party not

to infringe unspecified IP is insufficient "because otherwise it swoops in an entire portfolio that

has no connection to the dispute presented," and would impermissibly create "blanket declaratory judgment jurisdiction" based on such a letter. *DeCurtis LLC v. Carnival Corp.*, No. 20-22945-Civ-SCOLA/TORRES, 2021 WL 7539904, at *9 (S.D. Fla. Feb. 9, 2021). That is precisely what EnergyLink attempts to do here. It has not identified any specific trade secrets that Braden purportedly accused EnergyLink of misappropriating. It has not alleged that Braden accused EnergyLink of any specific acts of misappropriation. It has not alleged that it intends to engage in any specific activity that could arguably misappropriate Braden's trade secrets. There is thus no clear dispute as to any Braden trade secret. EnergyLink "is essentially seeking an advisory opinion." *Applera*, F.Supp.2d at 160. But "[t]here is no jurisdiction for that essay." *Id.*

In short, EnergyLink has failed to explain how the Court can meaningfully determine that it has not infringed "any" Braden trade secret. For this reason, EnergyLink's declaratory claim should be dismissed.

**B.      EnergyLink's declaratory judgment claim is contrary to the purpose of the Declaratory Judgment Act**

Braden also explained in its opening brief that EnergyLink's declaratory claim is inconsistent with the Declaratory Judgment Act because Braden has not threatened EnergyLink with impending litigation on trade secret claims. (Dkt. 8 at 8.) "The purpose of the Declaratory Judgment Act is to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish." *Huston v. U.S. Bank Nat'l Ass'n*, No. CV HJ-10-3702, 2011 WL 13254543, at *4 (S.D. Tex. Dec. 14, 2011). There is not "Damoclean threat" hanging over EnergyLink—to the contrary, Braden has already gone to court to assert its rights in its affirmative case. There is thus no reason to invoke the Declaratory Judgment Act. In its opposition, EnergyLink has not shown otherwise, and thus Braden's motion should be granted for this reason as well.

### C. EnergyLink's declaratory judgment claim improperly deprives Braden of its right as the master of the complaint

Relatedly, and as explained in its opening brief, Braden, as the intellectual property owner and tort plaintiff should be the master of its complaint. (Dkt. 8 at 6, 8.) It is therefore Braden, not EnergyLink, who has the right to choose "the nature of the claims asserted." *MH Sub 1, LLC v. FPK Servs., LLC*, No. 18-cv-834, 2019 WL 13138139, at *6 (W.D. Tex. June 21, 2019). Braden has chosen not to bring a trade secret lawsuit (based on the information now available to it) against EnergyLink. To allow EnergyLink, the potential tortfeasor, to use its declaratory judgment claim to compel Braden to litigate Braden's trade secrets in a manner dictated by EnergyLink would be improper. *See id.* at *5 ("[C]ourts find that it would be a perversion of the DJA to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the apparent tortfeasor.") (cleaned up). EnergyLink should not be permitted to usurp Braden as the "master of [its] complaint" on its intellectual property rights. *Id.* at *6. EnergyLink does not even mention *MH Sub 1* in its opposition, and thus has failed to respond to this point.

### D. EnergyLink's remaining counterarguments lack merit

EnergyLink raises various points in its opposition in an attempt to manufacture jurisdiction where none exists:

1. Under *BHL 2017*, subject matter jurisdiction over a declaratory claim of non-liability may exist even when the opposing party does not pursue a corresponding affirmative claim (Dkt. 22 at 7);

2. EnergyLink need not identify the specific trade secrets that form the basis of its declaratory judgment claim because Braden, as the trade secret owner, bears the burden of proof (*id.* at 7–8);

3. Braden's "demand letter" and complaint show that Braden has threatened EnergyLink's ability to make, sell, offer for sale, and supply SCR systems to customers (*id.* at 8);

4. A controversy exists because Braden did not grant EnergyLink a covenant not to sue for trade secret misappropriation (*id.*); and

5.       Braden did not discuss the *Trejo* factors in its motion.  (*Id.* 8–9.)

Each is without merit.

To start, EnergyLink is incorrect that *BHL 2017* supports jurisdiction.  In *BHL 2017*, it was undisputed that the IP owner had already identified its rights with sufficient specificity.   In particular, the declaratory judgment counterclaim-defendant's complaint in that case identified a specific infringing instrumentality (the counter-plaintiff's geo steering software), specific infringing acts (the counter-plaintiff's manufacture, use, or sale of that software), and a specific copyrighted work it believed was infringed (the counter-defendant's copyrights in its own geo steering software).  2017 WL 1177966 at *1.  As explained above and in Braden's opening brief, (Dkt. 8 at 7–8), neither EnergyLink's complaint nor Braden's notice letter provide remotely near the same level of specificity.  EnergyLink also wrongly asserts that an actual controversy exists because Braden has not ruled out the possibility of suing EnergyLink for alleged trade secret misappropriation in the future.  (Dkt. 22 at 7.)  Braden, as the IP owner, "has no obligation to spend the time and money to . . . make a definitive determination, at a time and place of the competitors' choosing, that it will never bring an infringement suit."  *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008).  And Braden's "silence" regarding IP claims that it has not asserted, such as over its trade secrets, "does not alone make an infringement action or other interference with [EnergyLink]'s business imminent."  *Id.*

Next, EnergyLink states that "[o]n a claim for declaratory judgment of no trade secret misappropriation, the purported trade secret owner bears the burden of proving the elements of an affirmative trade secret claim."  (Dkt. 22 at 7.)  This proposition is neither remarkable nor relevant.  That Braden, the trade secret owner, must carry its ultimate burden of proving the elements of a trade secret claim at trial (in the event EnergyLink's declaratory judgment claim proceeds beyond

the pleadings stage) does not relieve EnergyLink, as the declaratory judgment plaintiff and party asserting jurisdiction, of its burden of proving that jurisdiction in fact exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.") (citations omitted). And as explained, EnergyLink has failed to carry its burden. The *Medtronic* and *Synopsys* cases on which EnergyLink relies— which were decided at much later stages in the proceedings—are inapplicable and do not change this conclusion. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 195 (2014) (opinion after bench trial); *Synopsys, Inc. v. Risk Based Security, Inc.*, No. 3:21-cv-252, 2022 WL 3005990, at *1 (E.D. Va. July 28, 2022) (opinion at summary judgment).

Next, EnergyLink incorrectly argues that Braden's "demand letter" and complaint show that Braden has cast a cloud over actions EnergyLink wishes to take, forcing EnergyLink to choose to either pursue arguably illegal behavior or abandon that which it claims a right to do. (Dkt. 22 at 8.) But Braden's letter did not assert any particular trade secrets or allege any specific acts of misappropriation. Instead, the letter merely references aspects of Braden's IP portfolio with open-ended language, stating that Braden believes EnergyLink has in its possession "trade secret, confidential, and/or proprietary information . . . including but not limited to certain engineering drawings depicting aspects of the Company's selective catalytic reduction (SCR) systems," and that EnergyLink's employees "have used and/or disclosed" that information without authorization. (Dkt. 22 at 8; Dkt. 1-1.) And the "specific actions" EnergyLink "wishes to take," as alleged in the complaint—making, selling, offering for sale, and supplying SCR systems—were not mentioned by Braden in its letter at all. (Dkt. 22 at 8; Dkt. 1 at ¶ 31; Dkt. 1-1; *see also* Dkt. 8 at 8.) Although declaratory actions are intended to "fix the problem that arises when the other side does not sue,"

this problem does not exist where, as here, "the other side has not made any particularized suggestion of infringement and may never sue." *Applera*, 594 F. Supp. 2d at 160. More to the point, Braden did sue, and elected to pursue relief for copyright infringement concerning its proprietary drawings, not trade secret misappropriation. *Braden Group B.V. v. EnergyLink Int'l Inc.*, No. 23-cv-630, Dkt. 1 (S.D. Tex.).

EnergyLink also argues that because Braden did not withdraw its pre-suit correspondence and grant EnergyLink a blanket covenant not to sue for misappropriation of any trade secret whatsoever, an actual controversy exists. Again, EnergyLink is wrong. The lack of a covenant not to sue does not itself create an actionable controversy. *AIDS Healthcare Found., Inc. v. Gilead Sciences, Inc.*, 890 F.3d 986, 994 (Fed. Cir. 2018). In any case, that Braden did not grant EnergyLink a covenant is not relevant here. *See id.* at 995. EnergyLink, as the declaratory plaintiff, must show that "a case of actual controversy existed at the time the declaratory action was filed." *Id.* at 990. Because "the covenant not to sue was not requested by [EnergyLink] until after this suit was filed . . . this aspect was not among the circumstances at the time of filing." *Id.* at 995; (*see* Dkt. 22-1 (requesting covenant one week after the filing of EnergyLink's complaint).)

Lastly, EnergyLink argues that the Court must apply the factors set out in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994) in order to exercise its discretion to decline declaratory judgment jurisdiction, and that Braden has failed to address those factors. Not so. *Trejo* identified seven factors that broadly serve three core values, "federalism, the fairness of forum selection, and efficiency," and that guide a court's exercise of discretion to hear or dismiss a declaratory action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory judgment plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether

retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003). However, the *Trejo* factors are "non-exclusive," and "other considerations may be taken into account." *Euler Hermes N. Am. Ins. Co. v. ILJIN Steel Am., Inc.*, No. 16-cv-02215, 2017 WL 1013225, at *5 (Feb. 24, 2017), *report and recommendation adopted*, 2017 WL 978727 (S.D. Tex. Mar. 14, 2017); *Mill Creek Press, Inc. v. The Thomas Kinkade Co.*, No. 3:04-cv-1213-G, 2004 WL 2607987, at *6 (N.D. Tex. Nov. 16, 2004) (*Trejo* factors are "not exhaustive, and a court may consider other factors in deciding how to exercise its discretion to decide or dismiss a declaratory judgment action."). Most of the *Trejo* factors relate to considerations of forum, venue, and federalism that are all plainly irrelevant here: the parties agree that any claims should be heard in federal court and also agree on venue in this District. The only factor that is clearly applicable is the question of judicial economy, which cuts strongly against hearing EnergyLink's declaratory claim since Braden has not asserted any trade secret claims. Economy will be well served by limiting the litigation between the parties to the claim Braden has actually asserted, for copyright infringement.

Beyond the seven *Trejo* factors, other considerations weigh against jurisdiction over EnergyLink's declaratory judgment claim, including "the purposes of the Declaratory Judgment Act." *Trejo*, 39 F.3d at 590. As explained above and in Braden's opening brief, EnergyLink's declaratory claim contradicts the purposes of the Declaratory Judgment Act because there is no impending threat of litigation—Braden has already brought suit against EnergyLink, and that lawsuit involves claims for copyright infringement, not trade secret misappropriation. *See* Section I.B.

## II. ENERGYLINK'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

EnergyLink has failed to rebut Braden's showing that Counts 2–7 of the complaint are facially deficient. They should all be dismissed for failure to state a claim.

### A. Defamation (Count 2)

As set forth in Braden's opening brief, EnergyLink's defamation claim should be dismissed because the complaint does not plausibly allege an actionable, defamatory statement. (Dkt. 8 at 10–11.) The parties agree that allegations supporting a defamation claim must provide "fair notice" to the defendant of the claim. (Dkt. 22 at 9–10; Dkt. 8 at 10.) The sole dispute is how much specificity is required to provide "fair notice," and EnergyLink's allegations do not satisfy that requirement.

While Rule 9(b) does not apply, the "pleadings for a defamation claim must be sufficiently detailed to the extent necessary to enable the defendant to respond." *Traxxas, L.P. v. Dewitt*, No. 14-cv-733, 2015 WL 7777986, at *2 (E.D. Tex. Dec. 2, 2015). The claim must identify "specific defamatory statements." *Black v. Experian Info. Sol'ns, Inc.*, No. 21-cv-04231, 2023 WL 2267266, at *4 (S.D. Tex. Feb. 28, 2023) (Hanen, J.). The claim must also state the time and place of publication. *Traxxas*, 2015 WL 7777986, at *2; *Cantu v. Guerra*, No. SA-20-CV-0746-JKP-HJB, 2021 WL 2652933, at *17 (W.D. Tex. June 28, 2021) (fair notice may require "time and place allegations"). EnergyLink's conclusory defamation claims fail because it does not allege any specific statements made by Braden or provide context for the statements. *See Black*, 2023 WL 2267266, at *5 ("Black never identified what the . . . defamatory statements were or who said them. Having no words to examine . . . [and c]onsidering the conclusory nature of Plaintiffs allegations, the Court finds that he has failed to allege a defamatory . . . statement.").

EnergyLink relies on three cases to argue that its complaint provides Braden with "fair

notice" of the alleged defamatory statement: *Cantu*, *Encompass*, and *Accressa Health*. Each is distinguishable.

In *Cantu*, the court upheld the defamation claims as sufficiently pled because the counterclaim-plaintiff alleged specific defamatory statements (the plaintiff contracted a sexually transmitted disease and engaged in human trafficking and groomed minors for human trafficking), specific third parties to whom the statements were made (former employer, colleagues, friends, daughters, current husband, former in-laws, boyfriend's ex-wife), and the specific manner in which the statements were made (sixty-four text messages, social media messages, and telephone calls). 2021 WL 2652933 at *17.

In *Encompass*, the court found that the complaint sufficiently put the defendant on notice of the claim because it quoted the alleged defamatory statements and described them "in such a manner that will enable the Defendants to easily investigate the alleged statements through discovery," including by specifying the manner in which the statements were made (correspondents to patients and a press release). *Encompass Office Sol'ns, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 958 (E.D. Tex. 2011). Additionally, the *Encompass* defendants had already raised a "truth" defense to the alleged statements, which suggested that the complaint provided defendants with sufficient notice. *Id.*

Lastly, in *Accressa*, the defamation counterclaim was upheld because it included allegations that were sufficiently detailed to put the counterclaim-defendant on notice of what was said, and to whom. *Accresa Health LLC v. Hint Health Inc.*, No. 18-cv-536, 2020 WL 2610908, at *5 (E.D. Tex. May 22, 2020) ("Hint alleged that . . . Accresa repeated the false accusation that Hint's services were derived from trade secrets Hint stole from Accresa (Hint saw Accresa's 'underwear'), and further made statements to the effect that Accresa would use its immense

resources to wipe out Hint, and that Hint would not survive as a going to concern to Hint's clients, referral sources, and prospective business relationships.") (cleaned up).

In contrast to the claims in *Cantu*, *Encompass*, and *Accresa*, EnergyLink's complaint fails to provide the same level of detail regarding the content of the alleged statements or the circumstances surrounding those statements. And unlike the *Encompass* defendants, Braden has not yet raised any defenses to EnergyLink's defamation claims. Nor could Braden reasonably be expected to at this time, given EnergyLink's failure to identify the statements it accuses.

Instead, this case is more akin to this Court's decision in *Black* granting a motion to dismiss the plaintiff's defamation claim for failure to allege a defamatory statement. *Black*, 2023 WL 2267266, at *5. There, the plaintiff alleged that his credit rating was destroyed "by Defendants false and defamatory derogatory entries . . . through the Defendant's actions, inactions, and conduct," that the statement "involved a private matter," were "untrue," and "referred to Plaintiff directly," and that those acts constituted defamation. *Id.* The complaint did not "mention any specific statements made by any specific defendant." *Id.* It also "fail[ed] to provide the Court with any context of statements." *Id.* Thus, the Court found the plaintiff's allegations to be of a "conclusory nature" and that "he has failed to allege a defamatory . . . statement." *Id.* The only allegations that EnergyLink points to in Paragraph 26 of its complaint in support of its defamation claim are similarly deficient. (*See* Dkt. 22 at 10.) Specifically, EnergyLink's allegations that Braden "falsely accused EnergyLink of using Braden['s] intellectual property in EnergyLink's SCR systems," that "[i]n 2022 . . . EnergyLink was in discussions with GE about potentially supplying SCR systems to GE in Houston," and that EnergyLink had "recently become a GE certified vendor," (Dkt. 1 at ¶ 26), do not mention any specific statements or provide context for the statements. EnergyLink has therefore failed to plead a defamatory statement, and its

defamation claim should be dismissed.

## B.      Business Disparagement (Count 3)

EnergyLink's business disparagement claim must be dismissed because, as discussed above and in Braden's opening brief, EnergyLink has failed to allege an actionable statement. (Dkt. 8 at 11–12.)  EnergyLink does not offer any separate argument in its opposition for why its business disparagement claim survives.  Thus, EnergyLink concedes that if its defamation claim is insufficient, so too is its business disparagement claim.

## C.      Tortious Interference with Prospective Business Relationship (Count 4)

In its opening brief, Braden showed that EnergyLink's claim for tortious interference with prospective business relationship should be dismissed because the complaint does not allege (1) a reasonable probability of a business relationship, (2) an independently tortious or unlawful act, or (3) that Braden acted with an intent to prevent the relationship from occurring.  (Dkt. 8 at 12–15.) EnergyLink's opposition does not overcome any of these three independent failures.

**Reasonable probability of a business relationship.**  EnergyLink's complaint does not plausibly allege a reasonable probability that EnergyLink would have entered into a business relationship with a third party, GE, because it does not describe the specifics of a proposed agreement with GE that fell through.  And EnergyLink concedes that its complaint provides less detail than the similar claims considered by this Court in its *Corrosion Prevention* and *Stelly* decisions, as discussed in Braden's opening brief.  (*See* Dkt. 8 at 13–14.)

In addition, as EnergyLink's own cited cases hold, a "reasonable probability of a future business relationship" requires "more than speculation or the bare possibility that plaintiff would have entered into a business relationship."  *Official Brands, Inc. v. Roc Nation Sports, LLC*, No. 15-cv-2199, 2015 WL 8915804, at *5 (N.D. Tex. Dec. 15, 2015).  "Mere negotiations" are not enough.  *Id.*; *Sec. Data Supply, LLC v. Nortek Sec. & Control LLC*, No. 18-cv-1399-S, 2019 WL

3305628, at *8 (N.D. Tex. July 22, 2019). While a "pre-existing business relationship can suffice to show a reasonable probability of prospective contractual relations," that pre-existing relationship must be "an ongoing contractual relationship." *Sec. Data*, 2019 WL 3305628, at *8. EnergyLink has not pled that it has an ongoing contractual relationship with a third party, such as GE. And while EnergyLink argues in its opposition that it had reached a "near-agreement" with GE, (Dkt. 22 at 12), the complaint contains no allegations describing or even suggesting how far along EnergyLink's talks with GE had progressed. Instead, the complaint states only that "EnergyLink was in **discussions** with GE about **potentially** supplying SCR systems," that "EnergyLink was well-positioned to supply GE" by virtue of its "GE certified vendor" status and prior supplying of SCR systems in Houston to "other customers," and that GE ended the discussions suddenly because "it was too risky to get involved in a dispute between two vendors." (Dkt. 1 at ¶ 26 (emphasis added).) Without more, EnergyLink's allegations are too speculative and do not show a reasonable probability of a future business relationship.

None of EnergyLink's cited cases hold differently. For example, *Official Brands* and *Sec. Data* involved plaintiffs, who, unlike EnergyLink had not only a pre-existing business relationship, but an ongoing arrangement with a third party that had developed far past "mere negotiations." *See Official Brands*, 2015 WL 8915804, at *5 (plaintiff and third party had a "contractual arrangement" and plaintiff's efforts had resulted in tens of thousands of dollars in royalties for the third party); *Sec. Data*, 2019 WL 3305628, at *8-9 (approval of "special pricing terms" suggested that plaintiffs "reached or were close to reaching an agreement" with the third party). And *Rail Scale* involved a counterclaim-defendant who, unlike Braden, contacted the counterclaim-plaintiff's customers and threatened that "any company that does business with [the counterclaim-plaintiff] faces the risk of some sort of legal liability and involvement with the current litigation."

*Rail Scale, Inc. v. Balanced Railscale Certification, LLC*, No. 15-cv-02117-RSP, 2017 WL 319077, at *3 (E.D. Tex. Jan. 23, 2017).

As explained in Braden's opening brief, the complaint does not "describe the specifics of a proposed agreement that never came into fruition." *Corrosion Prevention Techs. LLC v. Hatle*, No. 20-cv-2201, 2020 WL 6202690, at *4 (S.D. Tex. Oct. 22, 2020); (Dkt. 8 at 13–14.) Instead, it only vaguely alleges that GE, a potential business partner, was purportedly influenced by Braden's alleged misconduct, and that EnergyLink expected to do business with GE in the future based on its prior work in the Houston area and its supposed status as a "GE certified vendor." But this, without more detail about any specific contract that EnergyLink allegedly lost due to Braden's actions, is not sufficient. *Corrosion Prevention,* 2020 WL 6202690, at *5 (finding no reasonable probability of a business relationship where counterclaims did not allege "facts showing what business relationship they expected to have with the listed businesses or pointed to a specific contract they allegedly lost" due to interference); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 776 (S.D. Tex. 2010) (finding no reasonable probability of a business relationship despite allegations of past business with third party).

**Independently tortious or unlawful act.** Because EnergyLink has not adequately alleged that EnergyLink has committed defamation or business disparagement, EnergyLink has failed to plausibly plead that Braden committed an independently tortious or unlawful act that prevented EnergyLink from entering into a business relationship. And EnergyLink has not shown that it has satisfied this element if the Court finds that EnergyLink has not plausibly pled claims for defamation and business disparagement.

**Intent.** The complaint does not plausibly allege that Braden acted with a conscious desire to prevent, or with certain knowledge that it would prevent, EnergyLink's contractual relationship

with GE from forming because EnergyLink has failed to plead that Braden actually knew of that relationship. EnergyLink asserts that it has pled "circumstantial factual support" for this element, but the allegations EnergyLink points to are too attenuated to plausibly support even an inference of intent. (Dkt. 22 at 13.) *First*, EnergyLink alleges it, together with Braden, previously pitched SCR projects together. (*Id.* (citing Dkt. 1 at ¶¶ 17–19.) But the complaint points to only one previous collaboration in 2019 concerning a different potential customer, ProEnergy. (Dkt. 1 ¶¶ 17–19.) Braden's knowledge of EnergyLink's prior dealings with ProEnergy does not suggest that Braden knew that EnergyLink would pursue business from GE. *Second*, EnergyLink cites statements from PricewaterhouseCoopers about "various claims and disputes" from Innova original equipment manufacturers, such as GE, concerning intellectual property ownership. (Dkt. 22 at 13 (citing Dkt. 1 at ¶ 22).) These "claims and disputes," however, are between those manufacturers and Braden; they have nothing to do with Braden's knowledge of business between EnergyLink and GE. *Lastly*, EnergyLink argues that Braden "made its false accusations of intellectual property misuse when EnergyLink was progressing toward securing GE's business." (*Id.* (citing Dkt. 1 at ¶¶ 26–27).) This allegation is also insufficient because, at most, it suggests that Braden's alleged statements were made at the same time as EnergyLink's negotiations with GE. It does not support an inference that Braden knew of those discussions or that Braden intended to prevent EnergyLink from forming a contractual relationship with GE.

### D. Unfair Competition (Count 5)

EnergyLink's unfair competition claim is wholly based on its claims for defamation, business disparagement, and tortious interference with prospective business relationship. (Dkt. 1 at ¶¶ 62–63.) Because those claims fail, so too does EnergyLink's unfair competition claim. *See Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 696 (S.D. Tex. 2015) (unfair competition claim must be premised on some other independent substantive tort or illegal

conduct). EnergyLink does not argue that its unfair competition claim is plausible in the event the Court finds that EnergyLink has not plausibly pled its claims for defamation, business disparagement, and tortious interference with prospective business relationship.

### E. False Advertising Under the Lanham Act (Count 6)

EnergyLink has failed to rebut Braden's showing that EnergyLink's claim for false advertising does not plausibly allege that Braden made a false or misleading statement in a commercial advertisement.

**False or misleading statement.** The complaint does not sufficiently describe the content and context of the alleged "false accusations" made by Braden that form the basis of EnergyLink's false advertising claim. EnergyLink's opposition relies entirely on its arguments in support of its defamation and business disparagement claims to show that it has pled a false or misleading statement. In doing so, EnergyLink cites *Healthpoint Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333 (W.D. Tex. Mar. 18, 2008) and *Solvay Pharm., Inc. v. Global Pharmaceuticals*, 298 F.Supp.2d 880 (D. Minn. 2004) to suggest that it has met its burden. (Dkt. 22 at 13–14.) However, these cases support Braden, not EnergyLink because each establishes that a plaintiff must plead a specific false or misleading representation, not an overgeneralized "general subject matter of the statement," as EnergyLink contends. (Dkt. 22 at 14.)

For example, in *Healthpoint*, the district court specifically found "that Plaintiffs have alleged a specific false or misleading misrepresentation in Defendant's commercial advertising— that [plaintiff] states and implies that [defendant's product] is a generic equivalent of [plaintiff's product], when in fact it is not." 2008 WL 728333 at *6.

Similarly, in *Solvay*, the district court found that Solvay met the pleading standards of both Rule 8 *and* the heightened pleading standard of Rule 9(b) by specifically identified the false or misleading representation by pleading that the defendant had "stated or implied that [the

defendant's product] is 'generic,' 'comparable,' and an 'alternative' to [plaintiff's product.]" 298 F.Supp.2d at 885–886. Notably, the district court found that the specificity of plaintiff's claims would be enough to meet the pleading standards of "both Fed. R. Civ. P. 8 and 9(b)," although the Court would not go on to determine which was applicable to plaintiff's claims in that case. *Id*. at 886.

In contrast, no such identification of any ***specific*** false or misleading statement exists here. EnergyLink has only broadly alleged that Braden accused EnergyLink of "using Braden[]'s intellectual properly in EnergyLink's SCR systems." (Dkt. 1 at ¶ 26.) This is facially insufficient to plead a false or misleading statement.

Accordingly, EnergyLink has failed to plausibly allege a false or misleading statement that is supported by sufficient factual detail.

**Commercial advertising or promotion.** The only statements EnergyLink relies on to support this element are those allegedly made by Braden to a single recipient, GE. EnergyLink has failed to allege facts sufficient to show that such isolated statements are sufficient. In its opposition, EnergyLink relies on *Mobius* and *National* to argue that Braden's alleged statements to a single potential purchaser, GE, was sufficiently disseminated to the public to constitute "commercial advertising or promotion." (Dkt. 22 at 14–16.) Each is inapposite.

*Mobius* involved two parties who competed for the business of a single customer in a "relevant purchasing market" that was "quite small." *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1010, 1021 (S.D.N.Y. 1994). The court found that a single letter qualified as commercial advertising or promotion because the "true relevant purchasing public consisted solely" of one potential customer, whose "impending purchase" of a competitor's product spurred the defendant to write a false and misleading letter comparing the

two products, in a "last-ditch effort to torpedo" the purchase.[2]  *Id.* at 1021.  And though *National* involved a "discrete bid proposal," the plaintiff "pleaded some facts that indicate the tools were 'custom-made' for the State," including an allegation that the "State's Request for Proposal included the statement that "Travel policies are based on Texas law, [the Comptroller's] rules, and individual Customer requirements."  *National Travel Sys., L.P. v. Shorts Travel Mgmt., Inc.*, No. A-10-CA-567-SS, 2010 WL 11601990, at *4-6 (W.D. Tex. Oct. 7, 2010).  Noting that "[o]bviously, these requirements are unique to the State," the court held that the complaint sufficiently stated a false advertising claim.  *Id.* at *6.

Here, unlike *Mobius*, EnergyLink has not alleged that it was in competition with Braden for a contract to supply SCR systems to GE.  Nor has EnergyLink alleged that its discussions with GE had progressed beyond mere negotiations, that a final agreement was impending, and that Braden reached out to GE to sabotage the deal.  EnergyLink has not alleged any facts that suggest that EnergyLink's products were custom-tailored for GE.  Additionally, unlike *National*, EnergyLink does not describe the nature of the products EnergyLink would supply or any GE-specific requirements beyond generically identifying "SCR systems." (*See* Dkt. 1 at ¶ 26.)  Indeed, the complaint suggests that EnergyLink's SCR systems are not custom-tailored to customers at all, as it alleges that its SCR system from 2019 was "in all material respects the same SCR system EnergyLink sells today." (*Id.* at ¶ 18.)  Moreover, although EnergyLink alleges it is a "GE certified vendor," the complaint does not even attempt to explain the meaning of this label.  (Dkt. 1 at ¶¶ 26, 57.)  In light of EnergyLink's failure to allege these facts and its statements that the purchasing

---

[2] Further, although the Fifth Circuit in *Seven-Up* indicated that it drew upon the "general approach" of *Mobius* and similar cases, it expressly withheld "agreement or disagreement with the precise holding or all that is said in any of them."  *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 n.10 (5th Cir. 1996).

public in the SCR industry includes many potential customers (*e.g.*, ProEnergy, GE, Siemens, Mitsubishi, Solar Turbines, Distributed Power Solutions, and others), (Dkt. 1 at ¶¶ 15, 17, 22, 26), there is no basis for EnergyLink's conclusion that the "relevant market plausibly consists of GE alone." (Dkt. 22 at 15.) Therefore, Braden's alleged statements to GE are not "commercial advertising or promotion." *See Boltex Mfg. Co. v. Galperti, Inc.*, 827 F. App'x 401, 406 n.2 (5th Cir. 2020) (emails sent to two customers were not "commercial advertising or promotion"); *see also AHBP LLC v. Lynd Co.*, No. SA-22-CV-00096-XR, 2023 WL 139714, at *7 (W.D. Tex. Jan. 9, 2023) (dismissing claim where alleged statements only distributed to plaintiff and a third party).

The complaint also does not plausibly plead that the alleged statements were made for the purposes of influencing customers to buy Braden's goods and services. As discussed above, EnergyLink has failed to allege that Braden and EnergyLink were in competition for a contract to supply SCR systems to GE or any other potential customer.

### F. False Advertising Under the Texas DTPA (Count 7)

As explained in Braden's opening brief, EnergyLink's false advertising claim under the Texas DTPA should be dismissed because the complaint fails to plausibly allege that EnergyLink is a "consumer" for purposes of the DTPA or an actionable statement. (Dkt. 8 at 19–20.) EnergyLink does not address Braden's arguments against its DTPA claim in its opposition brief. (*See* Dkt. 22 at 9–16.) EnergyLink has therefore waived any argument as to this claim. L.R. 7.4; *Magee*, 261 F. Supp. 2d at 748 n.10. The Court should dismiss EnergyLink's claim for false advertising under the Texas DTPA.

### CONCLUSION

For the foregoing reasons, Braden requests that the Court dismiss EnergyLink's complaint pursuant to Rules 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Dated:  April 14, 2023

Respectfully submitted,

FISH & RICHARDSON P.C.


By: */s/ Kevin Su*

Kevin Su, Attorney-in-Charge (*Pro Hac Vice*)
Massachusetts Bar No. 663726
Adam J. Kessel (*Pro Hac Vice*)
Massachusetts Bar No. 661211
Philip K. Chen (*Pro Hac Vice*)
Massachusetts Bar No. 703289
One Marina Park Drive
Boston, MA 02210
Tel. (617) 521-7042  Fax. (617) 542-8906
Email: su@fr.com; kessel@fr.com;
pchen@fr.com

Bailey K. Benedict (admitted in the Southern
District of Texas)
Texas Bar No. 24083139
S.D. TX Federal ID No. 1725405
909 Fannin St., 21st Floor

Houston, TX 77010
Tel. (713) 654-5399  Fax. (713) 652-0109
Email: benedict@fr.com

Kristen McCallion (*Pro Hac Vice*)
New York Bar No. 4428470
7 Times Square
20th Floor
New York, NY 10036
Tel. (212) 765-5070  Fax. (212) 258-2291
Email: mccallion@fr.com

*Attorneys for Defendant*
*Braden Europe B.V.*
*f/k/a Innova Global Europe B.V.*

<u>**CERTIFICATE OF SERVICE**</u>

 The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 14, 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.1.


*/s/ Kevin Su*
Kevin Su