**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| BRADEN GROUP B.V. and BRADEN AMERICAS, INC., <br> *Plaintiffs,* <br><br> v. <br><br> ENERGYLINK CORPORATION d/b/a ENERGYLINK INTERNATIONAL, <br> *Defendant.* | § § § § § § § § § § |

CIVIL ACTION NO. 4:23-CV-626

**DECLARATION OF ANDREW E. SAMUELS IN SUPPORT OF
ENERGYLINK'S MOTION FOR CIVIL CONTEMPT AND SANCTIONS**

I, Andrew E. Samuels, declare:

1. I am a partner at Baker & Hostetler LLP. I am counsel to Defendant EnergyLink Corporation d/b/a EnergyLink International in this matter. I make this declaration in support of EnergyLink's motion for civil contempt and sanctions. Unless otherwise stated, I make this declaration based on my personal knowledge.

2. To accommodate Braden and its counsel, EnergyLink allowed them to forensically image Jeff Wirt's original and replacement electronic storage devices on March 19 and 20, 2025 in BakerHostetler's Columbus, Ohio office.

3. Attending the imaging in person were: (1) for Braden, Philip Chen from Fish & Richardson; (2) for EnergyLink, me from BakerHostetler, and (3) Steven Sanabria from TransPerfect, an e-discovery vendor.

4. On the morning of March 19, Mr. Sanabria advised Mr. Chen and me that the only way to preserve the metadata for any of the files on Mr. Wirt's device was to image the entire device.

5. That same morning, EnergyLink provided Braden with a document prepared by Mr. Wirt showing which folders on his device contained, in the words of the Court's order "drawings, files, and documents that were copied by Jeff Wirt during his employment at Innova," ECF No. 91 ¶ 1, and a proposed a forensic imaging protocol. *See* Ex. A.

6. Attached as Exhibit A is a true and accurate copy of an email chain between counsel for EnergyLink and counsel for Braden dated March 19, 2025, which lists EnergyLink's proposed forensic imaging protocol.

7. Minutes after sending the protocol to Mr. Chen, I asked Mr. Chen if Braden had any proposed changes to, or issues with, the protocol. Mr. Chen said that he would talk to his team

and report any proposed changes or issues to me. Mr. Chen never reported any proposed changes or issues. In fact, to this day, no one from Braden has ever objected to EnergyLink's protocol.

8. When the forensic imaging concluded on March 20, Mr. Chen, Mr. Sanabria, and I discussed next steps. Everyone agreed that, as stated in paragraph 2 of the protocol, the next step was for Mr. Sanabria to provide "documentation showing only the folder structures" of the device to Braden and EnergyLink. Ex. A ¶ 2. Mr. Sanabria estimated that it would provide this documentation early in the week of March 24, 2025.

9. On March 27, 2025, EnergyLink emailed Braden to request an update about the progress of the folder-structure documentation. Ex. B at 3. Braden did not respond for six days. *Id.*

10. Attached as Exhibit B is a true and accurate copy of an email chain between counsel for EnergyLink and counsel for Braden dated March 27, 2025 through April 3, 2025.

11. On April 2, 2025, Braden informed EnergyLink for the first time that Braden possessed not only the folder-structure documentation, but a complete forensic copy of Mr. Wirt's device—including Mr. Wirt's personal, financial, and health-related files. *Id.*

12. Braden represented that "there are documents on the drives" that it disagreed were personal or irrelevant, which indicates that Braden had viewed those documents. *Id.* Braden also threatened to access or view additional files if it disagreed with EnergyLink's identification of which documents Mr. Wirt did or did not copy during his employment at "Innova." *Id.*

13. In response to this shocking development, EnergyLink requested that Braden immediately delete the complete forensic copy or return it to TransPerfect, that Braden arrange an immediate call with Braden and TransPerfect, and that Braden produce all of its and its counsel's communications with TransPerfect. *Id.* at 2.

14. This morning, April 3, 2025, Braden did not respond, so I attempted to contact Mr. Sanabria myself. Mr. Sanabria did not return my calls.

15. This afternoon, Braden responded by email. *Id.* at 1. In the response email, Braden incredibly argued that: (1) it "did not agree to any terms" concerning the forensic images, (2) it is "entitled to possession of" the complete forensic images, (3) it need not "return or destroy the forensic images," (4) the vendor is Braden's "consultant"—that is, not independent, (5) EnergyLink may not contact the vendor, and (6) EnergyLink was "interfering with [the vendor]'s work," which has never happened. *Id.* Braden claimed that, if EnergyLink did not accede to Braden's backwards reading of the Court's February 13, 2025 discovery order, it "will have no choice but to seek the Court's assistance." *Id.*

16. Braden admits that its counsel possesses a complete forensic copy of Mr. Wirt's device—including Mr. Wirt's personal, financial, and health-related files. *See id.* at 1, 3.

17. During the forensic imaging process, the parties agreed to a protocol providing in pertinent part that "TransPerfect, and only TransPerfect, will retain the complete forensic copies and the backup forensic copies throughout the litigation." Ex. A ¶ 5.

18. After Braden openly admitted to its contemptible conduct, it refused to cooperate with EnergyLink's requests that Braden immediately delete the complete forensic copy or return it to TransPerfect, that Braden arrange an immediate call with Braden and TransPerfect, and that Braden produce all of its and its counsel's communications with TransPerfect. Ex. B at 2.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 3, 2025 in Columbus, Ohio.

                                                                          */s/ Andrew E. Samuels*
                                                                          Andrew E. Samuels