United States District Court
Southern District of Texas
**ENTERED**
May 14, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BRADEN GROUP B.V. and BRADEN AMERICAS INC., | § § § | |
| *Plaintiffs,* | § § | |
| VS. | § § | CIVIL ACTION NO. 4:23-cv-626 |
| ENERGYLINK CORPORATION d/b/a ENERGYLINK INTERNATIONAL, | § § § § | |
| *Defendant.* | § § | |

**ORDER**

Plaintiffs Braden Group B.V. and Braden Americas, Inc. ("Plaintiffs" or "Braden") have filed a Rule 54(b) Motion for Reconsideration concerning the Court's Sealed Order (Doc. 190) that dealt with the parties' competing Motions for Summary Judgment. (Doc. Nos. 196, 197). EnergyLink Corporation d/b/a EnergyLink International ("EnergyLink") has filed a response in opposition. (Doc. No. 199). The Court held a remote hearing on the motion and has not only considered the briefing but also has considered the argument of counsel. It hereby grants the motion in part and denies it in part.

**I.**

In the motion, Braden has asked the Court to reconsider its ruling on the issue of ownership of the 15 engineering drawings at issue. The Court finds no reason to change its ruling on this issue. The Plaintiffs attempt to cast the Court's review of the alleged ownership evidence as a "weighing" of the evidence. (Doc. No. 196 at 16). It is more accurate to say that the Court analyzed the evidence that the parties put before it. The Court found there was no evidence that Braden actually acquired the 15 drawings in question. There was evidence that Plaintiffs acquired all the Innova Global Operating Ltd.-owned material on the Innova Canadian server, but *no* evidence that

any of the 15 drawings were on the acquired server. Plaintiffs gave the Court no proof that the drawings they claim they acquired were actually on the server.

Moreover, the actual agreement they signed (the Books and Records Agreement) specifically limited the data Plaintiffs purchased to that owned by Innova Global Operating Ltd. and specifically excluded any assets owned by any other party, including those entities related to Innova. The drawings indicate they were owned by Innova Global Ltd.—not Innova Global Operating Ltd. Braden had no contrary proof.

Thus, Braden has two holes in the evidence presented to the Court, both of which are ultimately fatal to its claim. First, it had no evidence that the 15 drawings at issue were actually contained on the Innova Canadian server. Second, it had no evidence that the drawings were owned by Innova Global Operating Ltd.—the only company whose data it allegedly bought. So even if it had evidence the drawings were on the server, then Plaintiffs presented no proof they were owned by Innova Global Operating Ltd.—the company whose assets it bought. Thus, the Court did not weigh competing evidence of ownership; it had no actual evidence from Plaintiffs of ownership.[1] The Plaintiffs' motion is denied on this point.

## II.

Braden has also asked this Court to reconsider at least a portion of its prior order pertaining to EnergyLink's false advertising, unfair competition, tortious interference with prospective business relationships, and defamation claims. This Court grants, at least in part, Plaintiffs' motion. In its prior order, the Court's ruling with regard to the ownership of the 15 drawings in question was limited to the drawings that were the subject of Plaintiffs' copyright claims against

---

[1] This Court obviously noted and discussed the fact that the drawings, themselves, are labeled as being owned by Innova Global Ltd.—not Innova Global Operating Ltd. While probative, the Court would have reached the same decision without this fact given the lack of proof by Plaintiffs that would raise an issue of material fact.

EnergyLink. As noted above, that ruling remains unchanged. The above-referenced claims all center around the statements made by Jeff Trost ("Trost") to General Electric that EnergyLink was improperly using Braden's data and drawings and that they were going to file suit. (Doc. No. 155-3 at 11).

Obviously, this statement has two separate representations: 1) that EnergyLink was improperly using Braden's data and drawings; and 2) that Braden was going to file suit. The second representation was obviously an accurate prediction as Braden did indeed file a lawsuit against EnergyLink.

The first representation with respect to EnergyLink's alleged use of Braden's data and drawings is not specific as to which data and documents were being improperly used. This Court's ruling as to Braden's inability to raise a fact issue as to the 15 drawings that are the subject of its copyright complaint in this Court does not necessarily, however, make Trost's statement false. In theory, EnergyLink could be improperly using other data and drawings that Braden obtained from PricewaterhouseCoopers, Inc. ("PWC"). That being the case, the Court's conclusion that its finding as to the ownership of the 15 drawings that are the subject of Braden's Complaint against EnergyLink rendered Trost's statement false (*see* Doc. No. 190 at 50) was an overstatement and the Court hereby strikes that conclusion. While this statement may ultimately be proven to be accurate, the Court finds that it is not the only conclusion that can be drawn at this point in time on the record before the Court. Therefore, it finds that a fact question exists as to whether Trost's statement was false.[2]

---

[2] Braden also claims that the Court's ruling finding a fact issue on EnergyLink's defamation claim was based on EnergyLink's incorrect assertion that the second email Liam Murphy of PwC sent to Trost was not in the record, so the Court should reconsider its ruling. The Court has already considered that email. Moreover, the Court finds Braden's characterization of that email to be far too expansive. The email states "[e]ssentially they buy the books, records and associated IP on the Canadian Server, and continue to have access to the books/records etc in Tulsa." (Doc. No. 161 at 2). This email does not equate to a statement that EnergyLink was allegedly using the IP Braden bought from PwC or that Braden bought any of the 15 drawings at issue.

This does not ultimately change the Court's overall conclusion that Braden was not entitled to summary judgment on EnergyLink's defamation claim based upon Trost's statement, or on EnergyLink's remaining Counts 4, 5, and 6, but it may affect the parties' positions as the case progresses.

### III.

Plaintiffs' final request is more procedural in nature. They request that this Court sever the ownership issue that is central to Braden's claims. This would make that issue appealable. If the Circuit Court were ultimately to disagree with this Court's conclusion on the ownership issue, that would not only necessitate a trial on those issues, but also would impact EnergyLink's remaining claims against Braden. For example, if Braden actually owns the 15 drawings in question, it could change the result on the defamation claim discussed above. EnergyLink opposes this request arguing that it is premature and that it is well into trial preparation for an upcoming trial next month.

The Court finds the most expeditious course of action is to sever the ownership issue and make it appealable. It is the primary issue in both the Plaintiffs' claims against EnergyLink, and it will be a key factor in EnergyLink's claims against the Plaintiffs. It is also a factor in the unfair competition claim. Consequently, a definite answer on this issue would be beneficial.

While it appreciates the preparation and scheduling efforts that both sides have undertaken, the Court finds that the Plaintiffs' requested procedure is the best course of action to take. It is the most efficient and expeditious route to a final resolution. Therefore, the Court grants Plaintiffs' motion on that issue and will enter a corresponding order to effectuate this process.

It is so ordered.

Signed on this the __14th__ day of May, 2026.

Andrew S. Hanen
United States District Judge